# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:03-CR-00231-GCM-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **ORDER** |
| JUAN CARLOS BARRAGAN, | |
| Defendant. | |

**THIS MATTER** comes before the Court on Defendant Juan Carlos Barragan's Motion for Sentence Reduction (ECF No. 763) and accompanying motion to seal (ECF No. 769). The government filed a response (ECF No. 766), and Defendant filed a reply (ECF No. 767). The matter is now ripe for disposition. For reasons discussed in more detail, the Court will grant the motion.

## I. BACKGROUND

Juan Carlos Barragan is a 52-year-old man on home confinement. He is serving a 295-month sentence—reduced from a 352-month sentence—in connection with his role in a drug trafficking conspiracy.

From June 2001 to December 2003, Juan Barragan and his brother Enrique operated a drug trafficking conspiracy that involved more than 150 kilograms of cocaine and approximately 2,000 pounds of marijuana. ECF No. 693 ¶ 9. Barragan owned a garage in Charlotte, which he used to coordinate drug deliveries. *See id*. ¶¶ 11, 12, 14, 18, 48. On December 6, 2003, federal agents raided Enrique's house, and uncovered drugs and firearms. *See id*. ¶¶ 16–17. A 9-millimeter pistol was found in Barragan's waistband. *Id*. ¶ 17.

A federal grand jury returned a true bill of indictment against Barragan, charging him with three offenses: (1) conspiracy to possess with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) possession with intent to distribute marijuana and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). *See* ECF No. 26. Barragan went to trial, and a jury convicted him of all three offenses. ECF No. 426.

At sentencing, the Court imposed 292 months of imprisonment on the drug offenses, and a mandatory five-year consecutive sentence on the firearm offense. ECF No. 597 at 2. All told, Barragan received a 352-month sentence, which was at the low end of the Guidelines recommendation. *See* ECF No. 693 ¶ 55. In 2016, the Court reduced Barragan's sentence to 295 months based on a sentencing law change known as Amendment 782. *See* ECF No. 738 at 1.

In July of 2020, Barragan filed his first pro se motion for compassionate release, asserting grounds related to his medical conditions. *See* ECF No. 741 at 3. The Court denied that motion in November 2020. *See* ECF No. 749 at 4. Barragan filed a second pro se motion in March of 2021, which was also denied. *See* ECF No. 750, 753. But in June of 2021, the Federal Bureau of Prisons concluded that Barragan should be released to home confinement.[1]

Barragan—now represented by counsel—moves the Court for a third time for compassionate release. He cited three "extraordinary and compelling reasons" for release: (1) his

---

[1] In March 2020, then-Attorney General William Barr directed the Bureau of Prisons to "prioritize the use of . . . home confinement" in order to protect staff and inmates in federal prisons. *See* William P. Barr, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/docs/bop_memo_home_confinement.pdf (Mar. 26, 2020). Prison officials were directed to prioritize vulnerable inmates in low and minimum security facilities, particularly those who had demonstrated good conduct in prison, and low recidivism risk (PATTERN) scores. *See id*. at 1–2.

heightened risk of serious illness from COVID-19; (2) the "sheer and unusual" length of his sentence; and (3) due process concerns associated with reincarceration.

## II. DISCUSSION

The Court now turns to the substance of Barragan's motions. First, the Court finds that extraordinary and compelling reasons, coupled with an individualized assessment of Barragan's circumstances, support a sentence reduction in this case. And second, the Court briefly disposes of Barragan's sealing motion.

### a. Motion for Sentence Reduction

Barragan first seeks a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

#### i. Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), authorizes courts to reduce a defendant's sentence on the motion of the defendant if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the Section 3553(a) factors merit a reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

Courts presently enjoy significant discretion in determining what qualifies as an "extraordinary and compelling reason" for release. In *United States v. McCoy*, the Fourth Circuit explained that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." 981 F.3d 271, 284 (4th Cir. 2020) (cleaned up). That is because—moving to the second requirement for granting compassionate release—there currently are no applicable policy statements issued by the Sentencing Commission.[2] *Id*.

---

[2] Courts may (but need not) refer to U.S.S.G. § 1B.13, which governs BOP-filed motions for compassionate release. *McCoy*, 981 F.3d at 282 n.7. The commentary to that section identifies

3

Even if a defendant shows "extraordinary and compelling reasons," a trial court must still make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual circumstances." *Id*. at 286. That assessment revolves around consideration of the so-called § 3553(a) factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id*. § 3553(a). Courts may also consider, as part of the individualized assessment, a defendant's relative youth at the time of his offense, the length of the sentence that has already been served, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *McCoy*, 981 F.3d at 286.

### ii. Extraordinary and Compelling Reasons

Barragan asserts three "extraordinary and compelling reasons" for a sentence reduction. First, he argues that he is at elevated risk for serious illness from COVID-19. Next, he argues that the length of his sentence constitutes an "extraordinary and compelling reason." Finally, Barragan claims that being ordered back to prison would present a Due Process issue that gives rise to "extraordinary and compelling reasons." Because the Court agrees that Barragan's risk of a severe

---

factors like the medical condition of the defendant, the age of the defendant, and family circumstances. *See* U.S.S.G. § 1B.13 cmt. 1.

outcome from COVID-19 infection is an "extraordinary and compelling reason" for release, the Court does not address Barragan's latter two arguments.

Barragan recites a litany of factors that increase his risk of hospitalization or death from COVID-19. First, Barragan is 52, an age that is associated with a significant increase in risk. *See* Centers for Disease Control and Prevention, *Risk for COVID-19 Infection, Hospitalization, and Death by Age Group*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Jan. 31, 2022) (noting that people aged 50 to 64 are 25 times more likely to die, compared to people aged 18 to 29). Barragan also suffers from several medical conditions: asthma, chronic obstructive pulmonary disease (COPD), obesity, hypertension, and anxiety and depression. As Barragan states, each of those conditions increases the risk of a serious outcome from COVID-19. *See* Centers for Disease Control and Prevention, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last updated Feb. 15, 2022). Acting in concert, multiple high-risk conditions can significantly elevate the risk of hospitalization and death. *See id.* (noting that someone with six to ten comorbid conditions is 3.3 times more likely to die than someone with none).

It is true that Barragan's risk from COVID-19 is significantly decreased by vaccination. However, the durability of vaccine protection is presently unknown. *See* Centers for Disease Control and Prevention, *Frequently Asked Questions About COVID-19 Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last updated Feb. 4, 2022) ("Scientists are continuing to monitor how long COVID-19 vaccine protection lasts. Recent studies show that protection against the virus may decrease over time."). What's more, vaccination is less protective of individuals with multiple comorbidities. In a study referenced by CDC Director

Rochelle Walensky, more than 75 percent of deaths among fully vaccinated people occurred among people who had at least four high risk factors. *See* Reuters Fact Check, *CDC Study Found That Over 75% of COVID-19 Deaths in Vaccinated People Were Among Those With At Least 4 Comorbidities*, Reuters, https://www.reuters.com/article/factcheck-walensky-study-idUSL1N2TS0S2 (Jan. 12, 2022); Christina Yek et al., *Risk Factors For Severe COVID-19 Outcomes Among Persons Aged ≥ 18 Years Who Completed a Primary COVID-19 Vaccination Series*, 71 Morbidity and Morbidity Weekly Report 19, 19 (2022). Here, Barragan has more than four comorbidities. In the event that Barragan were to return to a carceral setting, he would face increased risks of contracting illness from COVID-19, and increased risks of a deadly outcome from the same.

The government does not dispute Barragan's particular vulnerability to COVID-19. However, citing an unpublished out-of-circuit case, the United States argues that Barragan's motion is mooted by his status on home confinement. *See* ECF No. 766 at 2 (citing *United States v. Gunn*, Case No. 1:16-cv-10024, 2021 WL 719889, at *2 (C.D. Ill. Feb. 24, 2021)). The Court disagrees. In other contexts, parties invoking mootness because of voluntarily-ceased conduct must demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." See *Burke v. Clarke*, 842 F. App'x 828, 835 (4th Cir. 2021) (citation omitted).

Such a showing cannot be made here. Although the Department of Justice recently indicated that it would not return prisoners on home confinement to prison, it took the opposite position just a year ago. *See* Josh Gerstein, *Biden Justice Department Reverses on Returning Federal Convicts on Home Detention to Prison*, https://www.politico.com/news/2021/12/21/biden-reverses-prison-525884 (December 21, 2021).

6

The government also insists that it retains the discretion to return prisoners on home confinement to prison. *See Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency*, 45 O.L.C. __, 2021 WL 6145876, at *9 (Dec. 21, 2021) ("In some cases, of course, BOP might reasonably conclude that penological goals would be best served by returning a prisoner in home confinement to a prison facility.").

If the Court were to require Barragan to file a motion upon return to a congregate institutional setting, the resulting delay could be deadly. Barragan would have to file a new motion for compassionate release, which would likely take at least 30 days given the administrative exhaustion requirements for such a motion. *See* 18 U.S.C. § 3582(c)(1)(A). All the while, Barragan would be at heightened risk of contracting an illness that is especially likely to kill him.

The Court concludes that Barragan's motion is not moot, and that Barragan's vulnerability to COVID-19 constitutes an "extraordinary and compelling reasons" for a sentence reduction.

### iii. Section 3553(a) Factors

Because Barragan has established an "extraordinary and compelling reason" for a sentence reduction, the Court next conducts an "individualized assessment" to ascertain whether a sentence reduction would be appropriate in light of the § 3553(a) sentencing factors.

#### 1. Nature and Circumstances of the Offense

The Court begins with the nature and circumstance of the offense. *See* 18 U.S.C. § 3553(a)(1). Undoubtedly, Barragan's crimes were serious: the drug conspiracy he led was responsible for trafficking more than 150 kilograms of cocaine and approximately 2,000 pounds of marijuana in the Charlotte area. ECF No. 693 ¶ 6. And Barragan was also carrying a weapon, evincing a willingness to use or threaten violence in aid of his criminal activities. *Id.* ¶ 17. On the

7

other hand, Barragan did not actually use a weapon against anyone. On balance, the Court concludes that this factor weighs slightly against a sentence reduction.

### 2. History and Characteristics of the Defendant

Next, the Court considers Barragan's history and characteristics. Barragan was 34 when he committed the crimes of conviction. *See id*. at 2. That fact weighs against a sentence reduction because it suggests that Barragan's criminal activity was not the one-off product of immature judgment. But Barragan's present age—52—means that he is significantly less likely to reoffend. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 26 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (recording rearrest rates for federal offenders aged 50 to 59 at 32.4 percent, compared to 68.1 percent for offenders younger than 30). Recidivism seems particularly unlikely given the fact that Barragan had no criminal history before his offenses of conviction.

Barragan's institutional history is also relevant. First, Barragan was an exemplary inmate while incarcerated. During nearly two decades of incarceration, Barragan did not incur a single disciplinary infraction. *See* ECF No. 763-3 at 2. He invested significant time in rehabilitative activities, including the completion of a GED. *See* ECF No. 763-4 at 4. Barragan received positive work reviews from his camp work placement. *Id*. at 2. And officials at BOP considered Barragan sufficiently low risk that they released him to home confinement. Their trust in Barragan appears to have been well placed: Barragan is gainfully employed, visits his case manager weekly, refrains from drug use, and is otherwise compliant with home confinement. On balance, this factor weighs significantly in favor of a sentence reduction. *See McCoy*, 981 F.3d at 274 (affirming trial courts' decisions to reduce sentence based in part on evidence of rehabilitation in prison).

Barragan has also submitted letters from relatives and friends expressing their support for his motion. *See* ECF No. 765-8 through ECF No. 765-15. Because these letters indicate that Barragan enjoys substantial family and community support, they militate slightly in favor of a sentence reduction. *See United States v. Webb*, 5 F.4th 495, 499 (4th Cir. 2021) (recording that a "strong family structure" was among a district court's reasons for reducing a sentence under the First Step Act).

### 3. Propriety of the Sentence

The Court now considers whether the sentence presently imposed adequately (1) reflects the seriousness of the offense; (2) promotes respect for the law; (3) provides just punishment for the offense; (4) affords adequate deterrence to criminal conduct; (5) protects the public from further crimes of the defendant; and (6) avoids unwarranted sentence disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a).

The Court concludes that Barragan's sentence must be reduced to time served. Consistent with Barragan's original sentence, the Court will also impose a five-year term of supervised release. Barragan served nearly two decades in prison for crimes that, while serious, did not apparently result in anyone injured or killed. That period of time is more than ample to adequately reflect the seriousness of Barragan's crimes, promote respect for the law, provide just punishment for the offense, and deter similarly-situated individuals. Barragan's conduct in prison and on home confinement demonstrates that he is highly unlikely to reoffend, and the Court is satisfied that the public is safe with Barragan living in the community—as indeed he already is.

### b. Motion to Seal

The Court now briefly resolves Barragan's motion to seal.

### i. Legal Standard

9

Because the public has a presumptive right of access to judicial records and documents, materials in this Court are normally filed unsealed. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); Local Civil Rule 6.1(a). In resolving a motion to seal, the Court must (1) give the public notice of the request to seal and a reasonable opportunity to challenge the request; (2) consider less drastic alternatives to sealing; and (3) state the reasons for sealing, specific supporting findings, and the reasons for rejecting alternatives to sealing.

### ii. Analysis

The Court concludes that the motion to seal should be granted. First, the public has had ample notice of the motion, which had drawn no opposition in the approximately month-long span that it has been pending. The Court has considered less drastic alternatives to sealing. Because Barragan's motion includes sensitive medical records and private family information, the Court agrees that sealing of the motion is appropriate.

### III. ORDER

**IT IS THEREFORE ORDERED** that:

1. The Motion for Sentence Reduction (ECF No. 763) is **GRANTED**.

2. Barragan's term of imprisonment shall be **REDUCED TO TIME SERVED**, followed by five years on supervised release. This portion of the Order shall be **STAYED** for 14 days in order to permit the Bureau of Prisons and the U.S. Probation Office to make the necessary arrangements.

3. The Motion to Seal (ECF No. 769) is **GRANTED**.

**SO ORDERED**.

Signed: February 25, 2022

Graham C. Mullen
United States District Judge

10

Case 3:03-cr-00231-GCM-DCK   Document 771   Filed 02/25/22   Page 10 of 10